# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

In re:

CUTTING EDGE GRANITE, INC.,

Debtor.
_____/

Case No. 8:10-bk-18306
Chapter: 11

## BANK'S MOTION TO PROHIBIT OR CONDITION DEBTOR'S USE OF CASH COLLATERAL, AND FOR RELATED RELIEF AND TO PROHIBIT OR CONDITION USE OF CASH COLLATERAL

Pursuant to Federal Rule of Bankruptcy Procedure 4001 and Bankruptcy Code §§ 361, 362, and 363, Stearns Bank, National Association, as successor-in-interest to First State Bank, by asset acquisition by the FDIC as receiver for First State Bank (the "Bank"), by and through its undersigned counsel, hereby moves on the following grounds for an order of this Court (a) terminating or modifying the automatic stay to allow it to continue its foreclosure action against Cutting Edge Granite, Inc. (the "Debtor"), or, alternatively, (b) providing adequate protection of its security interests and liens in property of the Debtor's estate, and (c) prohibiting or conditioning the Debtor's use of cash collateral for reasons hereinafter set forth:

### A. Background Allegations

1.  The Debtor, together with its principals, Lawrence R. Crowley and Christopher Sorenson (together referred to as the "Guarantors") are parties to a lending relationship that involves four (4) obligations (the "Obligations").

2.  The aggregate balance of the Obligations as of March 25, 2010, was $1,747,793.82, together with after-accruing and subsequently incurred interest, late charges, attorneys' fees, and costs, the Bank expressly reserving its rights to default-rate interest from the date of acceleration and demand, that being April 5, 2010.

3.  A listing of each of the Obligations, indicating the outstanding balance as of March 25, 2010, and specifying the principal obligor, is as follows:

### "First Obligation": Note 1023471363.

| | |
|---|---:|
| Principal: | $1,487,798.44 |
| Interest (through 3/25/10, contractual non-default per diem of $206.6386 thereafter): | $ 25,623.19 |
| Late Charges (through 3/25/10): | $ 1,239.81 |
| Attorneys' Fees and Costs: | $ unliquidated |
| **Sub-total:** | **+$1,514,661.44** |

### "Second Obligation": Note 1023471364

| | |
|---|---:|
| Principal: | $ 31,376.30 |
| Interest (through 3/25/10, contractual non-default per diem of $4.7936 thereafter): | $ 595.88 |
| Late Charges (through 3/25/10): | $ 189.88 |
| Attorneys' Fees and Costs: | $ unliquidated |
| **Sub-total:** | **+$ 32,162.06** |

### "Third Obligation": Note 1023471365

| | |
|---|---:|
| Principal: | $ 7,762.84 |
| Interest (through 3/25/10, contractual non-default per diem of $1.2398 thereafter): | $ 138.86 |
| Late Charges (through 3/25/10): | $ 176.72 |
| Attorneys' Fees and Costs: | $ unliquidated |
| **Sub-total:** | **+$ 8,078.42** |

### "Fourth Obligation": Note 1023471366

| | |
|---|---:|
| Principal: | $ 185,445.15 |
| Interest (through 3/25/10, contractual non-default per diem of $44.4553 thereafter): | $ 4,845.63 |
| Late Charges (through 3/25/10): | $ 2,601.12 |
| Attorneys' Fees and Costs: | $ unliquidated |
| **Sub-total:** | **+$192,891.90** |

To these sums, attorneys fees, costs, and related expenses are added, some of which are associated with the pendency of this Reorganization. Accordingly, the aggregate balance of the Obligations as of the Petition Date exceeded $1,747,793.82.

4. The Obligations are evidenced by a series of loan, guaranty, security, and perfection documents (collectively, the "Loan Documents") executed and delivered by the Obligors to the Bank. The Loan Documents include, but are not limited to, the following:

a. "Loan and Security Agreement," dated June 25, 2007, executed and delivered to the Bank by The Debtor and attached hereto as Exhibit "A";

b. "Revolving Credit Note," dated June 25, 2007, executed and delivered by The Debtor and attached hereto as Exhibit "B";

c. "Non-Revolving Commercial Note," dated June 25, 2007, executed and delivered to the Bank by The Debtor and attached hereto as Exhibit "C";

d. "Non-Revolving Commercial Note," dated June 25, 2007, executed and delivered to the Bank by The Debtor and attached to hereto as Exhibit "D";

e. "Commercial Term Note," dated June 25, 2007, executed and delivered to the Bank by The Debtor and attached to hereto as Exhibit "E";

f. "Security Agreement," dated June 25, 2007, executed and delivered to the Bank by The Debtor and attached hereto as Exhibit "F";

g. "UCC1-Financing Statements," filed by the Bank with the Florida Secured Transaction Department on July 9, 2007 identified as 200705983062, September 6, 2007, identified as 200706457313 and July 9, 2007, identified as 200705983070 and attached hereto as Composite Exhibit "G";

h. "Certificates of Title," for 2001 ISU TK identification no. JALF5C13517700948 and 2001 ISA TK identification no. JALF5C13217701409 attached hereto as Composite Exhibit "H"'

i. "Guaranty of Loan," dated June 25, 2007, executed and delivered to the Bank by the Guarantors, attached hereto as Composite Exhibit "I"; and

j. "Demand Notice," dated October 2, 2009 to The Debtor from the Bank attached hereto as Exhibit "J."

5. The validity, enforceability, and secured status of the Obligation is evident from the Loan Documents.

3

6. All of the Obligations are cross-defaulted. All of the Obligations are cross-collateralized by all or virtually all assets of the Debtor, including inventory, equipment, furniture, fixtures, goodwill, accounts receivable, cash and non-cash proceeds, and related assets utilized in the ordinary operation of the Debtor's business (collectively, the "Collateral").

7. The Collateral fully secures the aggregate balance of the Obligations as referenced above, the margin of collateralization is violative of applicable provisions of the Loan Documents. This situation triggers multiple events of default under the Loan Documents, and has provided a basis for the Bank to deem itself insecure with respect to its collateral position. Defaults as of April 5, 2010, are reflected by correspondence from the Bank's counsel to the Debtor, a copy of which is attached hereto as Exhibit "K."

8. Pre-petition events of default under the Loan Documents that existed as of the Petition Date include, but are not limited to the following:

    a. Debtor failed to make monthly payments of principal and interest on the Obligations when contractually due together with certain late fees assessed, such that the Loan Documents are in a state of default with respect to the same;

    b. Debtor has removed personal property from the Debtor's business location, in a manner not contemplated pursuant to the Loan Documents;

    c. The Debtor has failed to submit periodic borrowing base certificates to the Bank as required pursuant to the Loan Documents;

    d. The Debtor's most recent financial reportings to the Bank reflect violations of non-payment covenants pertaining to the Collateral, including the Debtor's failure to maintain an appropriate "debt service coverage ratio" as computed by referenced Generally Accepted Accounting Principles;

    e. The Debtor has created consensual liens on a portion of the Collateral in favor of a business entity known as C & C North America, Inc., as evidenced by a UCC-1

4

Financing Statement relating to the Collateral, a copy of which is attached hereto as Exhibit "L";

f.  The Debtor has failed to timely pay its tax obligations in the ordinary course of its business, permitted an IRS lien to attach to the Collateral, failed to report the same to the Bank, all three (3) such events independently constituting defaults under the Loan Documents, a copy of said IRS lien being attached hereto as Exhibit "M";

g.  The Debtor has failed to provide an annual financial statement to the Bank as required for 2009;

h.  The Debtor has failed to provide monthly financial reports to the Bank as required from January 2009 to the present;

i.  The Debtor has failed to provide access to the Collateral for the Bank and its representatives;

j.  The Debtor has failed to provide proof of insurance on insurable components of the Collateral;

k.  The Debtor has failed to provide financial affidavits and reports for itself and the Guarantors;

l.  The Debtor has failed to maintain accounts at the Bank in order to enable the Bank to better monitor its collateral position; and

m.  The aforementioned conduct has caused the Bank to actually and reasonably deem itself insecure with respect to all the Obligations, notwithstanding the fact that the Obligations are cross-collateralized

The validity, enforceability, and status of the Obligations have never been questioned, and cannot reasonably be questioned at this time

9.  During or about April 2010, the lending relationship became the subject of a loan enforcement action (the "State Action") pending in the Circuit Court for the Sixth Circuit for the State of

Florida, styled <u>Stearns Bank, N.A., as successor-in-interest to First State Bank, by asset acquisition by the FDIC as Receiver for First State Bank</u>, Case Number 10-007338-CI-11.

### B. Allegations Relating to Relief Requested

10. On July 30, 2010 (the "Petition Date"), the Debtor became the subject of a Chapter 11 bankruptcy case (the "Reorganization"), and the filing occurred less than an hour before the commencement of a hearing in the State Action on the Bank's motion for issuance and enforcement of a pre-judgment writ of replevin with respect to the Collateral. The Bank has received no payments on account of the Obligations since prior to March 25, 2010.

11. The Debtor is currently acting as debtor-in-possession pursuant to Bankruptcy Code §§ 1107, 1108, and the orders of this Court.

12. The Collateral includes assets falling within the definition of "cash collateral" as set forth in Bankruptcy Code § 363(a) (the "Cash Collateral").

13. The Bank has requested that the Debtor provide a proposed form of budget to set forth anticipated income, expenses, and payments to be made to the Bank during the pendency of this Reorganization (the "Proposed Budget"). No Proposed Budget has been forthcoming.

14. The Bank is agreeable to the Debtor' use of Cash Collateral, from the Petition date through August 31, 2010, (the "Current Term") pursuant to the Budget subject to the Court's entry of an order that will:

    a. grant the Bank a replacement lien in the Cash Collateral to the same extent that it possessed the same pre-petition;

    b. direct payment of interest accruing at the contract rate under the Loan Documents on a monthly basis, for each of the Obligations, beginning immediately;

    c. require weekly borrowing base reporting in a manner consistent with the Loan Documents evidencing the First Obligation;

d. direct the Debtor to provide prompt proof of insurance in all insurable components of the collateral insuring the Obligations;

e. provide the Bank with reasonable inspection rights regarding its collateral and books and records relating to the same;

f. preclude the Debtor from exceeding debt service coverage ratio violations by any material degree in excess of the ratio violation as of the Petition Date without additional monetary adequate protection;

g. fix a deadline for the filing of any objection to the secured claim of the Bank as referenced above, given that the Bank has or will imminently file its proofs of claim in this Reorganization; and

h. provide other commercial reasonable protections for the Bank during the Current Term.

15. All of the foregoing provides a basis for termination of the automatic stay to permit the Bank to enforce its in rem rights with respect to the Collateral in the State Action pursuant to Bankruptcy Code § 362(d)(1), and additionally and alternatively the Bank seeks relief under Bankruptcy Code § 362(d)(2).

16. All of the foregoing additionally and/or alternatively constitutes "cause" for this Court's requirement that the Debtor adequately protect the Bank's security interests and liens in the Collateral pursuant to Bankruptcy Code § 361. While this Reorganization is pending, the Bank is prepared to accept the net Rents and other consideration as part of an adequate protection package.

17. The Bank has not consented to the Debtor's use of Collateral that constitutes "cash collateral" within the definition of Bankruptcy Code § 363(a), and the Court has not ordered the same, such that the Debtor's use should be conditioned or prohibited in a manner consistent with prevailing law.

WHEREFORE, the Bank respectfully requests the order of this Court that will:

a. grant this motion;

b. terminate the automatic stay with respect to the Collateral to permit the rescheduling of

the foreclosure sale of the Collateral in the context of the State Action; or

c.  alternatively, provide adequate protection sufficient to protect The Bank's security interests and liens in the Collateral;

d.  prohibit or condition the Debtor's use of the Cash Collateral; and

e.  provide for such other relief as this Court determines to be necessary and appropriate in the circumstance

/s/ John A. Anthony
**JOHN A. ANTHONY, ESQUIRE**
Florida Bar Number: 0731013
Anthony & Partners, LLC
201 N. Franklin Street, Suite 2400
Tampa, Florida 33602
Telephone: 813/273-5616
Facsimile: 813/221-4113
Attorneys for Stearns Bank, N.A., as successor to First State B
by asset acquisition from the FDIC as receiver for First State
Bank

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by electronic means and/or U.S. first class mail on the 7th of August, 2010, to:

Cutting Edge Granite, Inc.
12350 Belcher Road, Suite 13A
Largo, Florida 33773
*Debtor*

Jake Blanchard, Esquire
Law Offices of Marshall G. Reissman
5150 Central Avenue
St. Petersburg, Florida 33707
*Counsel for Debtor*

United States Trustee - TPA
Timberlake Annex, Suite 1200
501 East Polk Street
Tampa, Florida 33602

John A. Anthony, Esquire
Anthony and Partners
201 N. Franklin Street, Suite 2400
Tampa, Florida 33602

The Local Rule 1007-2 service list attached

/s/ John A. Anthony
**ATTORNEY**